UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| PETER ALLAN, RUSSELL JOHN HATTON, MICHAEL BENSON, STEVEN HAWKINS, RUSSELL LYNN NORTON, DANNY STONE, PATRICK OTTEN, RYAN WHITE, KENNETH DELANEY, DAVID HAMILTON, KENNETH DAYWITT, DENNIS WHITE, MAIKIJAH HAKEEM, DANIEL A. WILSON, and JOSEPH FRANCIOSA THOMAS,<br><br>Plaintiffs,<br><br>v.<br><br>MINNESOTA DEPARTMENT OF HUMAN SERVICES, JODI HARPSTEAD in her official capacity as Commissioner of Department of Human Services, MARSHALL SMITH, in his official capacity as Chief Executive Director of Direct Care and Treatment for the Minnesota Sex Offender Program, NANCY JOHNSTON, in her official capacity as the Minnesota Sex Offender Program Executive Director, and KEVIN MOSER, in his official capacity as the Moose Lake Facility Director for the Minnesota Sex Offender Program,<br><br>Defendants. | Case No.: 0:20-cv-01980-SRN-TNL<br><br><br><br>**MEMORANDUM, DECISION AND ORDER** |

Elizabeth A. Nielsen, Erick G. Kaardal, and William F. Mohrman, Mohrman, Kaardal & Erickson, P.A. 150 S 5th St Ste 3100, Minneapolis, MN 55402, for Plaintiff

Brandon L. Boese and Sarah Doktori, Office of the Minnesota Attorney General 445 Minnesota Street, Suite 1100, St. Paul, MN 55101, for Defendants.

1

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Motion for Summary Judgment [Doc. No. 92] filed by all Defendants, seeking dismissal of the Second Amended Complaint ("SAC") [Doc. No. 63]. Based on a review of the files, submissions, and proceedings herein, and for the reasons stated below, the Court **GRANTS** Defendant' Motion for Summary Judgment in its entirety.

I.   BACKGROUND

A.   Factual Background

This case concerns certain policies implemented during the early days and height of the COVID-19 pandemic by the Minnesota Department of Human Services ("MDHS") for incarcerated individuals in the Minnesota Sex Offender Program ("MSOP") located in two treatment hospitals in Moose Lake and St. Peter, Minnesota.

The U.S. Department of Health and Human Services ("HHS") declared a nationwide public health emergency relating to COVID-19 on January 31, 2020. The first COVID-19 case in Minnesota was reported on March 6, 2020, and on March 13 of that year, Minnesota Governor Tim Walz declared a peacetime emergency. The Minnesota peacetime emergency was terminated on July 1, 2021, while HHS continued the national public health emergency until May 11, 2023.

Prior to March 13, 2020, MSOP recognized "spiritual groups" under Policy 420-5300, governing spiritual practices. (*See* SAC, Ex. A. at 1.)[1] This policy allowed regular spiritual gatherings amongst the respective spiritual groups of MSOP, subject to a variety of rules. Each group, led by a spiritual resource volunteer ("SRV"), required permission from MSOP before engaging in new spiritual group activities including ceremonies. (*Id.* at 2.) The SRV was also required to be present to provide leadership whenever a "controlled item" was used in a spiritual ceremony. (*Id.* at 3.)

When seeking to form a new spiritual group, MSOP clients were required to submit information to the facility volunteer services coordinator ("VSC").[2] (*Id.* at 2.) When six clients each submitted a form with the requisite information expressing interest in a potential spiritual group, the VSC would begin recruiting an SRV, although groups of fewer than six clients could be considered by the VSC. (*Id.*) If a spiritual group ceased having an SRV, the facility director and facility clinical director could approve the group to continue to meet for a period of up to 90 days, with staff supervision, but after 90 days with no volunteer, MSOP would suspend the group. (*Id.* at 3.)

MSOP clients were generally allowed to participate in spiritual group ceremonies and events, unless either on a restricted status (in High Security Area, Pre-Hearing Restriction, or out of behavioral control) or if they violated an MSOP policy affecting

---

[1] The most recent version of Policy 420-5300 was issued on April 4, 2023. (*See* Declaration of Erick G. Kaardal ("Kaardal Decl.") Ex. 2.)

[2] Beginning in February 2020 and continuing through today, the VSC is David Clanaugh. (Declaration of David Clanaugh ("Clanaugh Decl.") [Doc. No. 97] ¶ 1.)

program safety and security or abused spiritual group time or studies. (*Id*. at 4-5.) Policy 420-5300 also expressly reserved MSOP's ability to limit religious observance for operational reasons, providing that "[w]hen necessary for the safety, security or orderly operation of the facility, the facility director/designee, in consultation with the facility clinical director, [could] limit attendance at, or temporarily discontinue a spiritual group ceremony or study." (*Id*. at 5.) No part of Policy 420-5300 expressly dealt with video visits or live-streaming.[3]

Under the pre-COVID version of Policy 420-5300, MSOP clients were allowed to obtain personal spiritual items through submitting a client request form for approval, while groups could also obtain group items stored by MSOP. (SAC, Ex. A. at 6-7.) Both individuals and spiritual groups could also obtain herbs and minerals for use in spiritual activity. (*Id*. at 7-8.)

On March 13, 2020, MSOP began to implement restrictions in line with Governor Walz's order. According to MSOP Health Services Director Nicole Boder, MSOP policy was formulated by health experts, administrators, and other MDHS officials, based on best practices advocated by the Centers for Disease Control ("CDC") and the Minnesota Department of Health ("MDH"). (*See* Declaration of Nicole Boder ("Boder Decl.") [Doc. No. 96], ¶¶ 3-7; Declaration of Brandon Boese ("Boese Decl.") [Doc. No. 95], Ex. 16

---

[3] The current version of Policy 420-5300 does not discuss video visits or live-streaming. (Kaardal Decl. Ex. 2.) Instead, MSOP's Computer Internet Streaming policy, issued on November 7, 2023, deals with these issues and incorporates Policy 420-5300 by reference. (*See* Kaardal Decl. Ex. 1.)

4

("Deposition of Nicole Boder" or "Boder Dep.") 14:3-7).)  Two relevant restrictions to reduce the spread of COVID-19 were implemented: (1) the suspension of in-person visits between program clients and outside visitors of any kind (later relaxed to allow some in-person visits depending on COVID-19 prevalence and community spread); and (2) restrictions on interaction between MSOP Moose Lake's eight units.  (Boder Decl. at ¶ 7.)

Also on March 13, 2020, MSOP issued a memorandum to MSOP clients, informing them that as a precautionary measure against COVID, MSOP would close its visiting room and suspend in-person meetings between clients and members of the public, including suspension of all spiritual programming with outside attendees, until the resumption of normal operations.  (SAC, Ex. B.)

On April 30, 2020, Boder issued a memorandum to all MSOP clients, updating them on COVID-19 related policies.  (Boder Decl. Ex. 2.)  Boder informed clients that MSOP falls under the CDC's category of "congregate living facilities," with effects on best practices for COVID-19 prevention and mitigation.  (Boder Decl. Ex. 2.)  Included in the memorandum were recommendations to "[i]dentify services and activities (such as meal programs, religious services, and exercise rooms and programs) that might need to be limited or temporarily discontinued [to maintain safe operations]" and to "[l]imit the presence of non-essential volunteers and visitors in shared areas, when possible[.]"  (*Id*.)

Outside MSOP facilities, on June 5, 2020, Governor Walz issued Executive Order 20-74, which allowed in-person religious ceremonies to resume with certain restrictions.  (SAC, Ex. C, at 5.)  MSOP facilities remained under the March 13, 2020, suspension of

5

spiritual gatherings and spiritual volunteer visits, including after the Plaintiffs initially filed suit in this matter on September 16, 2020 [Doc. No. 1].

According to the operative complaint, as of April 1, 2022, the strict quarantine at MSOP's Moose Lake facility had ceased, "as incarcerated clients eat together, work together and work-out together across units and visitors are being allowed. The cafeteria, library and gym are open." (SAC ¶ 44.) However, spiritual group policy had allegedly not been restored to its pre-COVID-19 status quo. (*Id.*)

While the pre-COVID-19 policy was not restored immediately, as COVID-19's severity waned, MSOP began allowing SRVs to return to the facility, at first with masking and vaccination requirements and later without them. (Boder Dep. 9:18–25.) For instance, noncontact visiting by outsiders was restored beginning on September 1, 2020. (*Id.* 18:125.) In January and February 2021, MSOP clients received their first and second doses of the COVID-19 exam. (Boder Decl. ¶ 13.) On April 1, 2022, MSOP restarted visiting for all units. (Boder Dep. 20:1–6.)

According to Boder, MSOP "returned to normalcy" at the end of HHS' COVID-19 emergency, which was lifted on May 11, 2023. (*See* Boder Dep. 10:1–6, 26:25–27:8; Boder Decl. ¶ 14; HHS Secretary Xavier Becerra Statement on End of the COVID-19 Public Health Emergency, U.S. Dep't of Health and Human Services, https://www.hhs.gov/about/news/2023/05/11/hhs-secretary-xavier-becerra-statement-on-end-of-the-covid-19-public-health-emergency.html.) According to Defendants, COVID-19-era restrictions on outside visitors and internal movement of clients among MSOP units have been entirely lifted and the pre-COVID-19 status quo has been restored. (Clanaugh

6

Decl. ¶ 16 ("Today, there are no COVID-specific policies in place that limit a client's ability to practice their faith."); Boder Decl. ¶ 14 ("Other than quarantining individual clients who may test positive for COVID-19, there are no COVID-specific movement or visitor restrictions at MSOP.").)

### B.     Procedural History

On September 16, 2020, Plaintiffs filed a complaint [Doc. No. 1] alleging that MSOP's limitations on spiritual group practices and gatherings violated the U.S. Constitution and Religious Land Use and Institutionalized Persons Act ("RLUIPA"), arguing that they suffered irreparable injury, and seeking declaratory and injunctive relief including a temporary restraining order.

On April 21, 2021, Plaintiffs filed their first amended complaint ("FAC") [Doc. No. 29]. The FAC maintained the first complaint's allegations concerning MSOP's COVID-19-related limitations on spiritual group practices and gatherings, while adding a third claim that MSOP's limitations on the use of tobacco—which were unrelated to COVID-19 and predated the pandemic—violated the Constitution and RLUIPA due to its restrictions on an important element of Native American religious practices.  (*Id*. ¶¶ 45-134.) Defendants responded by filing a motion to dismiss pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure [Doc. No. 30] on May 21, 2021.

The parties subsequently entered negotiations. After compromise and settlement, on March 4, 2022, the parties stipulated to the dismissal of the FAC's Count III, relating to tobacco [Doc. No. 52].

7

On April 1, 2022, Plaintiffs filed the SAC. The SAC did not raise new grounds for relief, but rather added additional arguments and context to the original claims that the pandemic-era restrictions on spiritual group activity violated RLUIPA and the Constitution. Defendants filed their answer on June 24, 2022 [Doc. No. 65]. In response, Defendants filed the motion now before this Court.

## II.   DISCUSSION

### A.   Standard of Review

The Constitution limits federal courts' jurisdiction to actual "Cases" or "Controversies." U.S. Const. art. III, § 2, cl. 1. If "'the issues presented are no longer live,'. . . a case or controversy under Article III no longer exists because the litigation has become moot." *Brazil v. Ark. Dep't of Human Servs.*, 892 F.3d 957, 959 (8th Cir. 2018) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)). In general, a case becomes moot "when changed circumstances already provide the requested relief and eliminate the need for court action." *Hillesheim v. Holiday Stationstores, Inc.*, 903 F.3d 786, 791 (8th Cir. 2018) (citing *McCarthy v. Ozark Sch. Dist.*, 359 F.3d 1029, 1035 (8th Cir. 2004)). If an action becomes moot, the court must dismiss it for lack of jurisdiction. *Ali v. Cangemi*, 419 F.3d 722, 723 (8th Cir. 2005).

Plaintiffs' allegations must also be properly before the Court under the operative complaint. *See Green v. Park*, Civ. No. 14-0857 (ADM/BRT), 2015 U.S. Dist. LEXIS 147436 at *7 n.3 (D. Minn. Oct. 9, 2015) (citing *Cutrera v. Bd. of Supervisors*, 429 F.3d 108, 113 (5th Cir. 2005), *adopted by* 2015 WL 6667722 (D. Minn. Oct. 30, 2015). Where the complaint raises allegations that, although phrased in broad and general terms, apply to

8

specific instances of conduct, the court will read these allegations in the context of the complaint as a whole. *See Young America's Found. v. Kaler*, 14 F.4th 879, 889 n.9 (8th Cir. 2021) (citing *Warmington v. Bd. of Regents*, 998 F.3d 789, 795 (8th Cir. 2021)). The Court will not "read in a new claim in order to confer standing" on a summary judgment motion. *Id.*

### B.     Analysis

Defendants argue that the Plaintiffs' claims are moot, as the pre-COVID-19 spiritual-practices policy status quo has been effectively restored at MSOP, and that Plaintiffs' other allegations constitute an improper attempt to amend their complaint by way of their summary judgment response. (Defs' Br. [Doc. No. 94] at 15-16; Defs' Reply Br. [Doc. No. 103] at 2-5.) Moreover, Defendants argue that these policies do not violate either RLUIPA or the Constitution. (Defs' Br. at 16-33.)

Plaintiffs do not dispute that their central complaints concerning MSOP's COVID-19-era restrictions have been mooted by the removal of these restrictions. (Pls' Br. [Doc. No. 102] at 5, 10-12.) Instead, Plaintiffs argue that they seek prospective equitable relief as to three remaining policies: (1) the minimum-size requirement of six to be a recognized spiritual group; (2) video-visiting by spiritual resource volunteers; and (3) live-streaming. Plaintiffs argue that these MSOP policies violate RLUIPA and the Constitution. (Pls' Br. at 12-28.)

The three policies asserted by Plaintiffs as violative of RLUIPA and the Constitution are not properly before this Court. Plaintiffs did not allege that the pre-COVID version of Policy 420-5300 violated any of Plaintiffs' constitutional or statutory rights. Rather,

9

Plaintiffs alleged that each spiritual group was "unable to gather, **as they had previously to the Department's March 13th directive**, to practice their spiritual beliefs." (*See* SAC ¶¶ 20-40) (emphasis added). The SAC states that "[p]rior to March 13, 2020, the Department recognized spiritual groups by its Policy 420-5300 and allowed regular and weekly spiritual gatherings amongst the respective Spiritual Groups of MSOP and allowed outside spiritual leaders and volunteers to lead spiritual gatherings." (*Id*. ¶ 14.) In their motion for preliminary injunctive relief, Plaintiffs sought to restore pre-COVID status quo rather than challenge those practices. (Pls' TRO Br. [Doc. No. 4] at 1.) Even Plaintiffs have admitted that the vast majority of the claims they brought are moot.

Defendants' allegedly violative policies are also not clearly named in the SAC. Plaintiffs do not allege any problem with the minimum group size under Policy 420-5300 or with possible restrictions on video visits or live-streaming. "Live-streaming" is mentioned several times, but only as a possibly less restrictive way to "allow the Plaintiffs to exercise their respective religious or spiritual ceremonies…when volunteers are unavailable to physically visit the MSOP facility or if a volunteer fails to meet certain criteria as a volunteer…to physically visit the MSOP facility." (SAC ¶¶ 87, 101, 143.) Live-streaming was not provided for under the pre-COVID-19 version of Policy 420-5300.

As the Eighth Circuit held in *Young America's Found. v. Kaler*, even where elements of the complaint "*could* be read to include a general [constitutional] challenge… 'the complaint should be read as a whole,'" with general language referring in context to the particular thrust of the complaint. *See Young America's Found.*, 14 F.4th at 889 n.9. Here, as there, where an alleged injury was not rooted in the original basis for the lawsuit, the

10

Plaintiffs had "ample opportunity to amend their complaint accordingly[,]" and are expected to do so, as Plaintiffs are "master[s] of the complaint." *Id*. (citing *Winfrey v. City of Forrest City*, 882 F.3d 757, 758 (8th Cir. 2018)). Plaintiffs did not do so. Allegations concerning the supposed constitutional or statutory failings of the pre-March 13, 2020, version of Policy 420-5300 are not at issue in this case, and it would be improper for the Court to reach them.

In their briefing and at oral argument, Plaintiffs also argue that Policy 420-5300's spiritual group size requirement has not been restored to the pre-COVID-19 status quo, as the requirement that six MSOP clients seek to form a spiritual group before recruitment of an SRV automatically began was previously measured across both the Moose Lake and St. Peter facilities, but now must be met within one MSOP facility. (Pls' Br. at 18.) This alleged change was corroborated by deponent Carol Clark, the St. Peter Volunteer Services Coordinator, who was not a 30(b)(6) deponent tasked with expressing departmental policy. (*See* Kaardal Decl. Ex. 11 ("Clark Dep.") 6:16–17.)

However, Clark's testimony also made clear that existing spiritual groups—such as those belonged to by Plaintiffs—have not been disbanded because their numbers have fallen below six. (Clark Dep. 9:10–15:1.) Moreover, Clark's testimony does not constitute an official statement of MSOP policy, and the current language of Policy 420-5300 allows MSOP to consider allowing groups smaller than six. (Kaardal Decl. Ex. 2 at 2.) In either case, Plaintiffs' allegation was not noticed in the SAC, nor did Plaintiffs seek to amend their complaint to make specific allegations as to this issue. Plaintiffs cannot proceed to

11

trial supported solely by a single argument that was not straightforwardly raised until its briefing in opposition to the instant motion.

The gravamen of Plaintiffs' suit is moot, as the COVID-19 pandemic has subsided along with related policies. The issues raised in Plaintiffs' opposition to the motion for summary judgment are distinct from those raised in the operative complaint. While MSOP's existing policies concerning spiritual groups may or may not abide by RLUIPA and the Constitution, the Court will not reach the merits of these questions as this is properly the subject of a separate litigation. As such, the Court grants summary judgment to the Defendants.

### III.  CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [Doc. No. 92] is **GRANTED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY**

Dated: January 19, 2024   /s/ *Susan Richard Nelson*
SUSAN RICHARD NELSON
United States District Judge